# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-00106-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>$28,720.00 IN UNITED STATES )<br>CURRENCY, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Government's Motion to Enter Judgment Against and to Strike the Claim of Sandra Isabel Rodriguez [Doc. 18].

**I.     PROCEDURAL BACKGROUND**

The Government initiated this civil *in rem* forfeiture proceeding on April 17, 2013 with the filing of a Verified Complaint. [Doc. 1]. The Claimants Fernando Gonzalez ("Gonzalez") and Sandra Isabel Rodriguez ("Rodriguez") (collectively, "Claimants"), through counsel, filed a joint Verified Claim on May 8, 2013. [Doc. 5]. The Claimants filed an Amended Verified Claim and an Answer on May 29, 2013. [Doc. 7].

A Pretrial Order was entered on July 25, 2013, setting a discovery deadline of April 1, 2014 and a motions deadline of May 1, 2014, and setting this matter for a bench trial during the September 8, 2014 trial term. [Doc. 11]. On April 8, 2014, the Government moved to compel Gonzalez's appearance at a deposition. [Doc. 12]. The Court denied the Government's motion as untimely on April 17, 2014. [Doc. 16]. The Government sought reconsideration of this motion [Doc. 18], which was denied [Doc. 20].

On May 1, 2014, the Government filed the present motion for the entry of summary judgment against Claimant Rodriguez only. [Doc. 18]. To date, Rodriguez has not filed any opposition to the Government's Motion.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011). Where the non-moving party has not responded to the motion, however, the Court may consider the forecast of evidence presented by the movant to be undisputed for the purposes of the present motion. See Fed. R. Civ. P. 56(e)(2).

**III.    FACTUAL BACKGROUND**

In light of Claimant Rodriguez's failure to respond to the Government's Motion, the following forecast of evidence is not in dispute.

On October 23, 2012, at approximately 9:30 p.m., Fernando Gonzalez was driving a 2004 BMW Mini Cooper, VIN WMWRC33494TC49089, in Buncombe County, North Carolina. [Verified Complaint, Doc. 1 at ¶ 9]. The BMW Mini Cooper was registered in North Carolina to Claimant Sandra Isabel Rodriguez. [Id. at ¶ 10]. Roice Figueroa was the only other passenger in the vehicle. [Id. at ¶ 11].

Gonzalez was stopped by Deputy Jason Lambert of the Buncombe County Sheriff's Office for driving erratically and operating a motor vehicle with an inoperable headlight. [Id. at ¶¶ 12, 13]. Deputy Lambert issued Gonzalez a citation for improper equipment. [Id. at ¶ 14]. Deputy Lambert requested and was given verbal consent by Gonzalez to search the vehicle. [Id. at ¶ 15]. During the search, approximately $5,000 in cash was discovered in the driver's door panel, and approximately $5,000 in cash was discovered under the driver's seat near the center console. [Id. at ¶¶ 16, 17].

Buncombe County Deputy Todd Ernst subsequently arrived on the scene with a canine. [Id. at ¶ 18]. Deputy Ernst requested and was given verbal consent by Gonzalez to conduct a canine search of the vehicle. [Id.

at ¶ 19]. The canine positively alerted to the presence of the odor of narcotics in the area of the driver's seat and center console. [Id. at ¶ 20]. A bag containing approximately $19,000 in cash was located on the driver's side floorboard in the area where the canine positively alerted. [Id. at ¶ 21].

A total of $28,720.00 was seized from the vehicle. [Id. at ¶ 31]. Of the cash seized, there were 69 hundred-dollar bills, 51 fifty-dollar bills, 948 twenty-dollar bills, 29 ten-dollar bills, and 4 five-dollar bills. [Id. at ¶ 32].

Gonzalez told the officers that he was a painter, and that he intended to purchase a house trailer with the funds seized from the vehicle. [Id. at ¶¶ 22, 23]. He further stated that a portion of the currency was from the sale of a Chevrolet Trailblazer, and that the rest of the currency was from a bank loan taken out by his wife. [Id. at ¶¶ 24, 25]. Gonzalez then stated that the loan was from his wife's brother. [Id. at ¶ 26]. Gonzalez provided a written statement in Spanish and English which completely translated into English stated that: "$29,000.00 with straining and sacrificing for years in order to give the first payment on a house." [Id. at ¶¶ 27, 28]. The passenger, Roice Figueroa, provided a written statement indicating that he had no knowledge of the money in the vehicle. [Id. at ¶ 29].

On October 25, 2012, at the Buncombe County Sheriff's Office, another canine positively alerted to the presence of the odor of narcotics in

one of six identical paper bags; the bag to which the canine alerted contained the currency seized from the vehicle on October 23, 2012. [Id. at ¶ 30].

In response to the Government's Special Interrogatories, Claimant Rodriguez asserted that she and Gonzalez lived together and were engaged. [Doc. 19-1 at 5]. Rodriguez further stated that $20,000.00 of the seized cash was a loan from Rodriguez's father to Gonzalez for the purpose of Gonzalez and Rodriguez purchasing a home; that $6,000 of the seized funds was from the sale of a Chevy Trailblazer that was titled in her name; and that the remainder were funds that Gonzalez had been saving for the past few months prior to the stop. [Id. at 4; Doc. 19-2 at 13].

Regarding the $20,000 loan, Gonzalez and Rodriguez presented in response to written requests for production of documents a promissory note signed by Gonzalez and Rodriguez's father, Humberto Rodriguez Beas, and witnessed by two other individuals. [Doc. 19-1 at 7]. Rodriguez testified that she was not a signatory to this note, was not present when it was purportedly executed, and never saw the note prior to it being produced to the Government. [Doc. 19-2 at 22-24]. Rodriguez testified that she never had seen the $20,000 proceeds from this loan and that she

6

did not know in what form Gonzalez received the proceeds. [Id. at 18 ("I'm guessing it was cash. I don't think it was [a] check. I wasn't there.").

As for the $6,000 which came from the sale of the Trailblazer, Rodriguez testified that the vehicle had been titled in her name only because "he [Gonzalez] can't [have] anything under his name" due to his status as an illegal alien. [Id. at 13]. Rodriguez testified that the vehicle had been sold for cash in July 2012, and that Gonzalez had received the full $6,000 over a period of months prior to the October 23, 2012 stop, although Rodriguez never saw the money. [Id. at 15-16].

## IV. DISCUSSION

Pursuant to 21 U.S.C. § 881, any "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical . . ., all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate" a drug trafficking crime are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6). It is pursuant to this provision that the Government seeks forfeiture of the $28,720.00 in United States currency seized during the October 23, 2012 traffic stop of Gonzalez and Figueroa.

In a civil forfeiture case, the Government bears the initial burden of establishing by a preponderance of the evidence that the subject property is subject to forfeiture. 18 U.S.C. § 983(c)(1); United States v. Sims, __ F. App'x __, 2014 WL 3377689, at *1 (4th Cir. July 11, 2014) (per curiam). Further, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Once the Government has presented its *prima facie* case, the burden then shifts to the claimant to demonstrate that he or she is an innocent owner of the property. See United States v. Munson, 477 F. App'x 57, 65-66 (4th Cir.), cert. denied, 133 S.Ct. 315 (2012).

Based on the forecast of evidence presented, the Government contends that Rodriguez cannot carry her burden of proving by a preponderance of the evidence that she is an innocent owner of the property under 18 U.S.C. § 983(d). [Doc. 18 at 1]. Before the Court reaches this issue, however, it must first determine whether the Government has satisfied *its* initial burden of demonstrating that the property at issue is subject to forfeiture as a matter of law. Based on the

record presented by the Government, the Court concludes that the Government has not met this burden.

In arguing that the subject property is forfeitable, the Government cites to two factors: the large amount of cash recovered ($28,720) and the specific denominations of that cash (mostly twenty-dollar bills), arguing that both are "highly probative of drug trafficking." [Doc. 19 at 17]. The Government further posits that "[t]he truth is that Fernando Gonzalez intended to either initiate or complete a drug deal with that cash." [Id.]. This statement, however, is merely speculation, as the Government offers no evidence to support this assertion. The discovery of a large amount of money in a consensual search of a vehicle during a routine traffic stop, without more, is simply insufficient to establish a substantial connection between those funds and a drug trafficking crime. See United States v. $405,089.23 in United States Currency, 122 F.3d 1285, 1290 (9th Cir. 1997) ("[T]he test requires more than the mere existence of a large amount of cash to establish a connection between that cash and illegal drug transactions; the money must be 'in combination with other persuasive circumstantial evidence'") (quoting United States v. Padilla, 888 F.2d 642, 644 (9th Cir. 1989)). Further, while evidence of possession of a large amount of money in lower denominations of bills may "help[ ] to establish a

'substantial connection' to drug trafficking," United States v. Puche-Garcia, No. 99-1612, 2000 WL 1288181, at *4 (4th Cir. Sept. 13, 2000), it is certainly not dispositive of the issue.  Absent any other persuasive circumstantial evidence suggesting an illegal drug transaction, the Government's current forecast of evidence fails to establish as a matter of law a connection between the seized cash and illicit drug activity.[1]

The Government contends that "[i]t is highly improbable that anyone would drive around [with] $28,720 in cash, honestly derived, in an automobile…. It is even less likely that anyone would carry around cash accumulated from three different sources over three different periods." [Id. at 23].  While this may be an effective argument at trial, viewing as the Court must the record in the light most favorable to the non-moving parties, there are genuine issues of material fact as to whether this cash was honestly derived.  The Claimants have asserted in their Answer as well as their various discovery responses and deposition testimony that these funds were obtained from legitimate sources, namely, a loan, a sale of a vehicle, and income from odd jobs.  While it may be "highly improbable" to

---

[1] In its brief, the Government does not specifically cite the positive canine alerts as an indicia of drug trafficking.  Even if the Government had done so, however, such evidence has only minimal probative value, as the Government has not presented any expert testimony or scientific evidence to establish the validity of these alerts.

the Government that anyone would carry that amount of cash with them, the record indicates that Gonzalez was in the country illegally and he could not have placed these funds in a bank account. Considering the totality of the circumstances and drawing all reasonable inferences in the Claimants' favor,

the forecast of evidence presented by the Government presents genuine issues of material fact as to whether the property seized is properly subject to forfeiture. Accordingly, the Government's motion for summary judgment is denied.

Because the Court concludes that the Government has not demonstrated as a matter of law that the defendant property is subject to forfeiture, the Court need not address the issue regarding Claimant Rodriguez's ownership of the subject property or whether her claim is subject to being stricken due to a lack of statutory standing. Such issues shall remain for trial.

**IT IS, THEREFORE, ORDERED** that the Government's Motion to Enter Judgment Against and to Strike the Claim of Sandra Isabel Rodriguez [Doc. 18] is **DENIED**.

**IT IS SO ORDERED.**

Signed: July 28, 2014

Martin Reidinger
United States District Judge